CREIGHTON ST. JOSEPH REGIONAL HOSPITAL, APPELLANT, V. NEBRASKA TAX EQUALIZATION AND REVIEW COMMISSION AND DOUGLAS COUNTY BOARD OF EQUALIZATION, APPELLEES.

620 N.W.2d 90

Filed December 15, 2000.   No. S-99-1398.

906

William E. Peters, of Peters & Chunka, P.C., for appellant.

James S. Jansen, Douglas County Attorney, James R. Thibodeau, and, on brief, Timothy J. Buckley for appellee Douglas County Board of Equalization.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## I. INTRODUCTION

In this appeal from the Nebraska Tax Equalization and Review Commission (TERC), we are presented with the following issues: (1) Whether the filing fee provided for in Neb. Rev. Stat. § 77-5013 (Cum. Supp. 2000), which states that a "person filing an appeal with [TERC] shall pay a filing fee of twenty-

five dollars," must be paid in order to confer jurisdiction upon TERC; (2) whether TERC had the authority to adopt a rule stating that if the filing fee does not accompany the appeal, the appeal will not be accepted by TERC; (3) whether TERC had the authority to adopt a so-called "mailbox rule," whereby TERC will accept appeals so long as they are *postmarked* within the statutorily prescribed time for *filing* appeals; and (4) whether TERC has the equitable power to adopt a "doctrine of unique circumstances," which allows TERC to accept appeals that have been filed outside the statutory filing period because of the appellant's reliance on an erroneous statement by TERC that such appeals would be accepted. For the reasons that follow, we answer all of these issues in the negative and dismiss the appeal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Creighton St. Joseph Regional Hospital (St. Joseph) owns certain real property located in Douglas County. St. Joseph's parent company is Tenant Corporation, which "out sources" its property tax work to a property tax consultant in Texas. In 1998, St. Joseph received an unfavorable determination from the Douglas County Board of Equalization on a valuation protest it filed for 1998. St. Joseph's tax consultant postmarked and sent St. Joseph's appeal to TERC on August 25, 1998, but did not include the $25 filing fee set forth in § 77-5013, and as required by a rule adopted by TERC which states that if the filing fee does not accompany the petition, the petition will not be accepted by TERC. See 442 Neb. Admin. Code, ch. 5, § 001.05 (1999). After receiving the petition with no filing fee, TERC apparently attempted to contact St. Joseph's tax consultant, and on September 3, TERC mailed the appeal form back to St. Joseph's tax consultant in Texas. St. Joseph's tax consultant subsequently sent a completed appeal form, accompanied by a check for the filing fee, with a letter explaining why the appeal should be continued. TERC accepted the appeal form on September 16.

At a hearing on St. Joseph's appeal, TERC raised the issue of whether it had jurisdiction to hear the appeal. Following the hearing, on November 10, 1999, TERC issued an order dismissing St. Joseph's appeal for "want of jurisdiction." TERC first

determined that it had the power to promulgate its so-called "mailbox rule," whereby TERC views appeals that have been postmarked within the statutory filing period as properly "filed." See 442 Neb. Admin. Code, ch. 5, § 001.03 (1999). TERC cited its statutory power to adopt and promulgate rules and regulations for notice and hearing in cases as authority for its adoption of this rule.

Second, TERC addressed the fact that the TERC appeal form for 1998 misstated the deadline for filing an appeal with TERC. The form stated that appeals cannot be filed after August 25, 1998. However, the statutory deadline for filing appeals to TERC in 1998 was August 24. See Neb. Rev. Stat. § 77-1510 (Cum. Supp. 2000). Because TERC had misstated the filing deadline on its own appeal form, TERC invoked what it termed as the "doctrine of unique circumstances." The doctrine is based on estoppel principles and would apparently allow untimely filings to be considered by TERC if the untimeliness was due to reliance on TERC's misstatement of the filing deadline. TERC based its decision to invoke such doctrine on Kansas case law and on its power to consider decisions of the county boards of equalization in equity.

Finally, TERC determined that it lacked jurisdiction to hear the appeal, concluding that the filing fee, provided for in § 77-5013 and in TERC's formally adopted rules, "is a prerequisite to conferring subject matter jurisdiction upon the Commission." It is from this determination that St. Joseph appeals.

## III. ASSIGNMENTS OF ERROR

St. Joseph assigns that TERC erred in (1) finding that the payment of the $25 fee was jurisdictional and (2) dismissing the case.

## IV. STANDARD OF REVIEW

Appellate review of a Tax Equalization and Review Commission decision shall be conducted for error on the record. *Mid City Bank v. Douglas Cty. Bd. of Equal., ante* p. 282, 616 N.W.2d 341 (2000). The meaning of a statute is a question of law, and a reviewing court is obligated to reach its conclusions independent of the determination made by the Tax Equalization

and Review Commission. See, *State v. Hernandez*, 259 Neb. 948, 613 N.W.2d 455 (2000); *Baker's Supermarkets v. State*, 248 Neb. 984, 540 N.W.2d 574 (1995).

## V. ANALYSIS

### 1. $25 FILING FEE

The filing fee associated with appeals from county boards of equalization to TERC is currently provided for by § 77-5013 and a rule adopted by TERC, 442 Neb. Admin. Code, ch. 5, § 001.05. We have not previously addressed whether the filing fee in § 77-5013 is jurisdictional, nor have we addressed whether the rule TERC adopted is valid. Section 77-5013 states, in relevant part, the following: "The person filing an appeal with the commission shall pay a filing fee of twenty-five dollars . . . ." We first address whether the statute establishes the filing fee as necessary to confer jurisdiction on TERC. If the statute does not, we must determine whether TERC has the authority to adopt a rule which effectively makes the filing fee jurisdictional, stating that petitions "filed without the filing fee will not be accepted by the Commission." See 442 Neb. Admin. Code, ch. 5, § 001.05.

### (a) Whether $25 Filing Fee in § 77-5013 is Jurisdictional

In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *American Employers Group v. Department of Labor, ante* p. 405, 617 N.W.2d 808 (2000). The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *State ex rel. AMISUB v. Buckley, ante* p. 596, 618 N.W.2d 684 (2000); *Alegent Health Bergan Mercy Med. Ctr. v. Haworth, ante* p. 63, 615 N.W.2d 460 (2000). In ascertaining what the Legislature intended when it enacted § 77-5013, we begin by considering the statutory provisions regarding how appeals are to be taken to TERC.

In order to appeal a matter to TERC from a county board of equalization, § 77-1510 states:

Appeals may be taken from any action of the county board of equalization to the Tax Equalization and Review Commission in accordance with the Tax Equalization and Review Commission Act. The appeal shall be filed within thirty days after adjournment of the board which, for actions taken pursuant to section 77-1502, shall be deemed to be July 25 of the year in which the action is taken. After an appeal has been initiated, the county board of equalization shall have no power or authority to compromise, settle, or otherwise change the action it has taken with respect to such assessment, and exclusive jurisdiction thereof shall be vested in the Tax Equalization and Review Commission, except that the county board of equalization may offer to confess judgment pursuant to section 77-1510.01.

Section 77-5013 provides for filing fees and states, in relevant part, that "[t]he person filing an appeal with the commission shall pay a filing fee of twenty-five dollars . . . ." St. Joseph contends that the plain language of § 77-5013 does not render the filing fee jurisdictional and that if the Legislature had intended to make it jurisdictional, it would have explicitly done so as it has done in other appeal statutes.

Indeed, prior to the enactment of the TERC act, the Legislature had explicitly established filing fees as jurisdictional in other appeal statutes. In appeals from county court to district court, the Legislature explicitly stated that depositing the filing fee "shall perfect the appeal and give the district court jurisdiction of the matter appealed." Neb. Rev. Stat. § 25-2729(2) (Reissue 1995). We affirmed that the language of this statute explicitly established the filing fee as jurisdictional in *State v. Hunter*, 234 Neb. 567, 451 N.W.2d 922 (1990). See, also, *Rorick Partnership v. Haug*, 228 Neb. 364, 422 N.W.2d 365 (1988).

With respect to appeals from a district court ruling, the Legislature provided:

[A]n appeal shall be deemed perfected and the appellate court shall have jurisdiction of the cause when such notice of appeal has been filed and such docket fee deposited in the office of the clerk of the district court . . . and no step other than the filing of such notice of appeal and the depositing of such docket fee shall be deemed jurisdictional.

Neb. Rev. Stat. § 25-1912(3) (Reissue 1995). The Legislature was clear in making the filing fee jurisdictional in this statute. With respect to § 25-1912, this court has long held that "the Legislature intended that the filing of the notice of appeal and the depositing of the docket fee 'in the office of the clerk of the district court' are both mandatory and jurisdictional." *American Legion Post No. 90 v. Nebraska Liquor Control Commission*, 199 Neb. 429, 430-31, 259 N.W.2d 36, 37 (1977), quoting *Barney v. Platte Valley Public Power and Irrigation District*, 144 Neb. 230, 13 N.W.2d 120 (1944).

■ Where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent. *Brown v. Kindred*, 259 Neb. 95, 608 N.W.2d 577 (2000). The Legislature has not amended these two statutes in response to our interpretation of its intent with respect to filing fees. Because it has clearly and explicitly made filing fees jurisdictional in at least two other statutes, see §§ 25-2729 and 25-1912, it is obvious that the Legislature understands how to make the filing fee a jurisdictional requirement. See *Dalition v. Langemeier*, 246 Neb. 993, 524 N.W.2d 336 (1994) (when Legislature enacts law affecting area which is already subject of other statutes, it is presumed that it did so with full knowledge of preexisting legislation and decision of Supreme Court construing and applying that legislation).

■ The statute TERC determined to be jurisdictional in the case at bar does not resemble the statutes in which the Legislature has made filing fees explicitly jurisdictional. If the Legislature had intended the $25 filing fee in § 77-5013 to be jurisdictional, it could have clearly included jurisdictional language as it has done in other appeal statutes. See *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998) (this court refused to read particular disclosure into statute where Legislature was fully aware of how to make such disclosure explicitly required by statute). It is not within the province of the courts to read a meaning into a statute that is not there. *Ramsey v. State*, 259 Neb. 176, 609 N.W.2d 18 (2000). We therefore hold that in the absence of clear legislative expression, the failure to pay a filing fee of $25 at the time of filing an appeal pursuant to § 77-5013 is not a juris-

dictional flaw that subjects the appeal to an automatic dismissal by TERC. TERC erred when it determined that the payment of the $25 filing fee was a jurisdictional prerequisite.

We pause, however, to note that our determination that the statutory filing fee is not jurisdictional does not mean that the filing fee is discretionary. Indeed, we have held that as a general rule, in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion. *State on behalf of Minter v. Jensen*, 259 Neb. 275, 609 N.W.2d 362 (2000). It is clear that the Legislature has required the filing fee to be paid by use of the word "shall" in § 77-5013. Thus, TERC may insist upon the payment of the filing fee prior to acting upon any appeal, and dismissal of an appeal may ultimately be an appropriate remedy in the event that an appellant fails to comply with the statutory filing fee requirement within a reasonable period of time. There is an obvious distinction between an administrative body not *acting upon* an appeal because of *nonpayment* of the $25 filing fee and an administrative body not *accepting* an appeal, based on jurisdictional grounds, because of *late payment* of the $25 filing fee. Our holding is limited to the extent that the submission of the $25 filing fee under § 77-5013 is not required to confer jurisdiction upon TERC.

(b) Whether TERC Was Given Power to Adopt Rule
Requiring $25 Filing Fee to Accompany Appeal

Because § 77-5013 does not explicitly require the filing fee to accompany the appeal to TERC, we must determine whether TERC had the power to adopt a rule which does more than merely preserve the mandatory nature of the filing fee—a rule, incidentally, which TERC could properly adopt, as noted in the preceding paragraph. Rather, we must address the validity of a rule which makes the filing fee a jurisdictional prerequisite. As stated earlier, TERC has adopted a rule which declares that petitions "filed without the filing fee will not be accepted by the Commission." 442 Neb. Admin. Code, ch. 5, § 001.05. We begin by examining the manner in which powers are delegated to TERC by the Legislature.

It is a well-established principle that a legislative enactment may properly confer general powers upon an admin-

istrative agency and delegate to the agency the power to make rules and regulations concerning the details of the legislative purpose. *County Cork v. Nebraska Liquor Control Comm.*, 250 Neb. 456, 550 N.W.2d 913 (1996). It is equally well established, however, that an administrative agency is limited in its rulemaking authority to powers granted to the agency by the statutes which it is to administer, and it may not employ its rulemaking power to modify, alter, or enlarge portions of its enabling statute. *Id.* In other words, although the Legislature may give TERC the power to adopt rules and regulations to carry out a set of statutes (the TERC act), such delegated authority is limited to the powers delegated to TERC by the particular statute which the agency is to administer. See, *Clemens v. Harvey*, 247 Neb. 77, 525 N.W.2d 185 (1994); *State ex rel. Spire v. Stodola*, 228 Neb. 107, 421 N.W.2d 436 (1988).

The Legislature has, as it may properly do, given TERC the general power to adopt rules and regulations to carry out the TERC act. See *County Cork v. Nebraska Liquor Control Comm.*, *supra*. Neb. Rev. Stat. § 77-5021 (Reissue 1996) states that "[t]he commission may adopt and promulgate rules and regulations to carry out the Tax Equalization and Review Commission Act." As noted above, this general power to adopt rules and regulations to carry out a set of statutes is limited to the powers delegated to TERC by the specific statute which it is to administer. See *Clemens v. Harvey, supra.* Thus, we must look to the specific statutes which TERC is charged with administering in order to determine whether TERC has exceeded its granted powers.

We determine that TERC has not been delegated the power, by virtue of any specific statute which it is to administer, to adopt a rule which excludes appeals to TERC that are not accompanied by the filing fee provided for by § 77-5013. The statute regarding filing fees would be the most logical place for the Legislature to grant TERC the specific power to promulgate a rule regarding filing fees. The Legislature has not done so. Again, § 77-5013 states, in relevant part, that "[t]he person filing an appeal with the commission shall pay a filing fee of twenty-five dollars . . . ." As we have concluded, the statute does not, in itself, require the filing fee to accompany the appeal. Not only has the Legislature not made the filing fee jurisdictional,

nowhere in § 77-5013 has the Legislature given TERC the power to make it jurisdictional.

The only other statute which TERC could have been given the power to regulate its own jurisdiction is Neb. Rev. Stat. § 77-5015 (Reissue 1996). TERC has been granted the authority to "adopt and promulgate rules and regulations for notice and hearing in cases appealed." § 77-5015. In the context of the language in § 77-5015, it is clear that the Legislature did not intend to give TERC the power to regulate its jurisdiction when it used the phrase "notice and hearing":

> In any case appealed to the commission all parties shall be afforded an opportunity for hearing after reasonable notice. The notice shall state the time, place, and issues involved, but if, by reason of the nature of the proceeding, the issues cannot be fully stated in advance of the hearing or if subsequent amendment of the issues is necessary, they shall be fully stated as soon as practicable. Opportunity shall be afforded all parties to present evidence and argument. . . . Informal disposition may also be made of any case by stipulation, agreed settlement, consent order, or default. *The commission shall adopt and promulgate rules and regulations for notice and hearing in cases appealed.*

(Emphasis supplied.) In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *American Employers Group v. Department of Labor, ante* p. 405, 617 N.W.2d 808 (2000).

The plain and ordinary meaning of the phrase "notice and hearing" does not encompass jurisdictional matters. The language of § 77-5015, prior to the provision granting power to regulate notice and hearing, clearly indicates that the statute is intended to satisfy the due process requirements of the U.S. and Nebraska Constitutions by adequately providing notice and hearing to parties appealing to TERC.

Finding no authority for TERC to promulgate a rule which, in essence, restricts TERC's jurisdiction by stating that TERC will not accept an appeal if the filing fee does not accompany the appeal, we conclude that TERC exceeded its statutory

grant of power by promulgating such a rule. Because TERC exceeded its rulemaking power in promulgating 442 Neb. Admin. Code, ch. 5, § 001.05, the rule is without statutory authorization and of no effect in the instant case. Therefore, it was error for TERC to dismiss St. Joseph's appeal on the ground that St. Joseph did not submit a filing fee with its appeal. Payment of the filing fee is not a prerequisite to conferring jurisdiction upon TERC either by statute or by rule adopted by TERC.

## 2. EXTENSION OF STATUTORY FILING DEADLINE

In its findings and order in the case at bar, TERC discussed its so-called "mailbox rule," which essentially states that appeals will be deemed filed so long as they are postmarked within the statutorily prescribed filing period. See 442 Neb. Admin. Code, ch. 5, § 001.03. TERC also discussed its borrowing of the "doctrine of unique circumstances" from Kansas case law, which has allowed TERC to accept appeals filed and postmarked after the statutory deadline. Both have effectively extended the 30-day filing deadline for appeals to TERC as set forth by statute in § 77-1510. Although neither of these issues was assigned as error on appeal, it is necessary for us to address the jurisdictional issues these proposed extensions present.

Even though an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the absence of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte. *County of Sherman v. Evans*, 252 Neb. 612, 564 N.W.2d 256 (1997). Subject matter jurisdiction is the power of a tribunal to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. *Glass v. Nebraska Dept. of Motor Vehicles*, 248 Neb. 501, 536 N.W.2d 344 (1995). To acquire jurisdiction over the subject matter of the action, there must be strict compliance with the time requirements of the statute granting the appeal. See *id.* Here, we are concerned with the statute under which appeals are taken to TERC, specifically § 77-1510, which provides the time line within which appeals to TERC must be taken. We must determine whether TERC had the authority to adopt a rule which affects the timing of appeals filed as well as TERC's adoption of

an equitable principle which would give it subject matter jurisdiction over untimely filed appeals in certain situations.

### (a) Whether TERC Was Given Power to Extend Statutory Filing Time by Adopting "Mailbox Rule"

In its findings and order, with respect to its authority to adopt a "mailbox rule," TERC stated that "[w]hether an agency has the authority to adopt the 'mailbox rule' appears to be a question of first impression in the State of Nebraska." The issue, however, is not whether just any agency has the authority to adopt the "mailbox rule." The proper question is whether a particular agency, in this case TERC, has specifically been given the power by the Legislature to adopt a rule which effectively expands its jurisdiction. As discussed above, an administrative agency's authority is delegated to it by the Legislature and is embodied in statutes. See *County Cork v. Nebraska Liquor Control Comm.*, 250 Neb. 456, 550 N.W.2d 913 (1996).

TERC has promulgated a rule regarding appeals filed by mail. It states, in relevant part, the following:

> An appeal is deemed to have been filed when the filing fee is paid, the Appeal Form . . . and, if applicable, the Petition, are mailed to the Commission at its office in Lincoln, Nebraska, and the envelope which contains the filing fee, Appeal Form and, if applicable, the petition, bears a postmark . . . establishing that the envelope was mailed not later than the deadline for the filing of petitions in person. Appeals mailed to the Commission with a postmark earlier than the first date for filing appeals as allowed by statute, or later than the last date for filing appeals as allowed by statute, are filed out of time.

442 Neb. Admin. Code, ch. 5, § 001.03. For appeals filed in person, the rule adopted by TERC mirrors § 77-1510, which is the statute setting forth the time line for filing appeals. Section 77-1510 states, in relevant part, the following:

> Appeals may be taken from any action of the county board of equalization to the Tax Equalization and Review Commission in accordance with the Tax Equalization and Review Commission Act. The appeal shall be filed within thirty days after adjournment of the board which, for

actions taken pursuant to section 77-1502, shall be deemed to be July 25 of the year in which the action is taken.

In order to decide whether TERC's mailbox rule is valid, we must determine whether TERC has been given the power to adopt such a rule. See *County Cork, Inc. v. Nebraska Liquor Control Comm., supra.* As noted earlier, TERC's general power to adopt rules and regulations to carry out a set of statutes is limited to the powers delegated to TERC by the specific statute which it is to administer. *Clemens v. Harvey*, 247 Neb. 77, 525 N.W.2d 185 (1994). Section 77-1510 clearly states that appeals *must be filed* within 30 days after adjournment of county boards of equalization. TERC's mailbox rule effectively states that appeals will be deemed filed so long as they are *postmarked* by the statutory filing deadline. In determining whether the statute requires the appeal to be in the possession of TERC within the statutory filing period or whether the statute leaves open the possibility for TERC to adopt a rule allowing appeals so long as they are postmarked within the statutory filing period, we find it helpful to consider similar statutory schemes and how they relate to other administrative agencies.

The Department of Labor (DOL) and the Department of Motor Vehicles (DMV) have both adopted rules which allow appeals postmarked, but not filed, within the filing period to be accepted as filed under certain circumstances. The DMV has a procedure for filing a petition for a hearing and has adopted a rule relating to the time of filing. The rule adopted by the DMV states that a petition must be "delivered to the Department or postmarked within ten (10) days after receipt of the petition form by the Appellant." 247 Neb. Admin. Code, ch. 1, § 013.02 (1998). This rule was adopted by the DMV pursuant to a statute which states that "[t]he arrested person shall postmark or return to the director a petition within ten days after the receipt of the notice of revocation if the arrested person desires a hearing." Neb. Rev. Stat. § 60-6,205(6)(a) (Reissue 1998). The Legislature explicitly gave the DMV the power to adopt a rule which sets forth the same standard as the enabling statute sets forth.

The DOL has also adopted a rule regarding the filing of appeals for disputed claims. The rule states the following:

> The notice of appeal must be received by a Department office, or the Employment Security office of another state, within twenty calendar days after the determination was mailed. . . . Appeals postmarked within the twenty days but not received by the Department or other state's office within the twenty days shall not be considered as timely filed.
>
> The Appeal Tribunal may hear an appeal filed outside the twenty days for good cause shown.

224 Neb. Admin. Code, ch. 1, § 003 (1989). The enabling statute the DOL relied on in promulgating this rule sets forth the same standard as that set forth by the rule: "Notice of appeal must be in writing and must be delivered and received within twenty days . . . . For good cause shown, the tribunal may also take jurisdiction over appeals filed outside the prescribed appeal period." Neb. Rev. Stat. § 48-634 (Reissue 1998). The DOL properly has discretion to allow appeals filed outside the appeal period because the Legislature specifically provided as much in the DOL's enabling legislation. The Legislature was quite specific in providing which appeals the DOL may and may not hear.

Additionally, we have previously addressed a situation similar to the issue at hand in the context of an election statute. In *State, ex rel. Smith, v. Marsh*, 120 Neb. 287, 232 N.W. 99 (1930), this court was faced with language in an election statute requiring a candidate to file a document by a certain number of days before the primary election. The statute stated that a candidate's name shall not be printed on a ballot " 'unless at least forty days prior to such primary [the candidate] shall have filed a written application with the proper authority.' " *Id.* at 290, 232 N.W. at 101. The proper authority to file with in that case was the Secretary of State. The Secretary of State had a practice of accepting applications so long as they were *postmarked* within the legal filing time, as the Secretary of State had deemed the deadline to be discretionary. This court held that the Secretary of State erred when he equated a postmark to filing an application:

> Here the statute is perfectly plain as to the upset time of filing. There was nothing to construe or interpret. Either the filing was in time or it was not. To hold otherwise is to allow the [Secretary of State] to legislate as to the time of

filing. That is the office and function of the legislature. It has definitely expressed its will.

*Id.* at 295, 232 N.W. at 103. *State, ex rel. Smith, v. Marsh* is quite similar to the case at bar.

The statute we are presented with in the instant case states that appeals must be filed within a certain time period each year. See § 77-1510. It is clear that the court in *Marsh* interpreted the word "filed" to mean "in the possession of" the Secretary of State. We agree that the word "filed" means "in the possession of" a particular person or agency, as the circumstance dictates, and that § 77-1510 makes it clear that the appeal must be in the possession of TERC in order to be considered filed.

These statutes and this court's prior rulings make it clear that the Legislature was fully aware of how to make postmarking equivalent to filing and fully aware of our interpretation of statutory language similar to the language at issue here. Armed with this knowledge, the Legislature did not make postmarking equivalent to filing with respect to an appeal to TERC. Jurisdictional statutes are to be strictly construed. See, *State v. Parmar*, 255 Neb. 356, 586 N.W.2d 279 (1998); *Barney v. Platte Valley Public Power and Irrigation District*, 144 Neb. 230, 13 N.W.2d 120 (1944). Again, it is not within the province of the courts to read a meaning into a statute that is not there. *Ramsey v. State*, 259 Neb. 176, 609 N.W.2d 18 (2000). Therefore, we refuse to read language into § 77-1510 which would make the postmarking of an appeal equivalent to filing an appeal. If the Legislature had intended as much, it would have done so in § 77-1510.

We conclude that TERC exceeded its statutory authority when it adopted a rule which allowed appeals to be considered so long as they were postmarked within the statutory filing period. Therefore, TERC's "mailbox rule" in 442 Neb. Admin. Code, ch. 5, § 001.03, is without statutory authorization and of no effect in the instant case. As a result, St. Joseph's appeal must have been received by TERC on or before the final date for filing appeals under § 77-1510. The statute provides that an appeal must be filed within 30 days of July 25 of any particular year. Therefore, because August 24, 1998, was a Monday, and was 30 days after July 25, St. Joseph's appeal must have been in

TERC's possession on or before August 24 in order be considered timely. Because St. Joseph did not file on or before August 24, 1998, the appeal was not timely filed and TERC did not have subject matter jurisdiction to hear the appeal.

### (b) Whether TERC had Authority to Adopt Doctrine of Unique Circumstances

TERC is an agency which has only the powers conferred upon it by the Legislature. TERC has been given the power to hear appeals from county boards of equalization in equity to determine the questions raised before the county board of equalization "which relate to the liability of the property to assessment, or the amount thereof." Neb. Rev. Stat. § 77-1511 (Reissue 1996). This statute does not, however, grant TERC general equitable power to use in any situation. Its power of equity is confined to those questions "which relate to the liability of the property to assessment, or to the amount thereof." See § 77-1511. In other words, TERC's equitable power is confined to its review of the specific actions of the county boards of equalization. See, *Bartlett v. Dawes Cty. Bd. of Equal.*, 259 Neb. 954, 613 N.W.2d 810 (2000); *Pittman v. Sarpy Cty. Bd. of Equal.*, 258 Neb. 390, 603 N.W.2d 447 (1999). Therefore, TERC does not have the power to apply equitable principles in jurisdictional matters, much less borrow equitable doctrines from other states in order to expand its own jurisdiction. TERC erred in adopting and applying the "doctrine of unique circumstances," as the Legislature has not given TERC the power to use equitable powers in jurisdictional matters.

Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties. *Hagelstein v. Swift-Eckrich*, 257 Neb. 312, 597 N.W.2d 394 (1999). When an administrative agency lacks subject matter jurisdiction over a claim, the courts also lack subject matter jurisdiction on appeal. *R-D Investment Co. v. Board of Equal. of Sarpy Cty.*, 247 Neb. 162, 525 N.W.2d 221 (1995). Because TERC did not have subject matter jurisdiction to hear St. Joseph's appeal, we also lack subject matter jurisdiction to consider St. Joseph's appeal.

## VI. CONCLUSION

For all of the above reasons, TERC lacked subject matter jurisdiction to consider St. Joseph's appeal. We likewise lack subject matter jurisdiction and dismiss St. Joseph's appeal for lack of jurisdiction.

APPEAL DISMISSED.